**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GLENN CAPMAN,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **JURY TRIAL DEMANDED** |
| | : | |
| **LACKAWANNA COUNTY,** | : | **CIVIL ACTION** |
| **LACKAWANNA COUNTY SHERIFF'S** | : | |
| **OFFICE, and MARK McANDREW,** | : | |
| **individually and in his official** | : | |
| **capacity,** | : | |
| | : | |
| **Defendants.** | : | **NO. 2021-CV-_____** |

## COMPLAINT

AND NOW Plaintiff Glenn Capman ("Officer Capman"), through his undersigned counsel, hereby complains of Defendants Lackawanna County (the "County"), the Lackawanna County Sheriff's Office (the "Sheriff's Office"), and Mark McAndrew ("Sheriff McAndrew"), individually and in his official capacity as the County's Sheriff (collectively, "Defendants"), as follows:

## INTRODUCTION

This action for injunctive, declaratory, monetary, punitive and other appropriate relief is brought by Officer Capman against the County, the Sheriff's Office and Sheriff McAndrew to redress the intentional violations by Defendants of the rights secured to Officer Capman by the laws of the United States of America and the statutory and

common law of the Commonwealth of Pennsylvania.  The County and the Sheriff's Office, by and through the actions and/or inactions of Defendants, retaliated against Officer Capman when Officer Capman made certain speech that was protected under the First Amendment, and engaged in protected association activities, as is set forth below.

## THE PARTIES

1.    Officer Capman is an adult individual who resides at 418 Varsity Drive, Throop, County of Lackawanna, Pennsylvania 18512.

2.    The County is a municipality organized under the laws of the Commonwealth of Pennsylvania with its principal place of business located at 200 North Washington Avenue, Scranton, County of Lackawanna, Pennsylvania 18503.

3.    The Sheriff's Office is a full-service law enforcement agency with its principal place of business located at 200 North Washington Avenue, Scranton, County of Lackawanna, Pennsylvania 18503.

4.    Sheriff McAndrew is an adult individual with his principal place of business located at 200 North Washington Avenue, Scranton, County of Lackawanna, Pennsylvania 18503.

5.    At all times relevant hereto, Sheriff McAndrew served as the Sheriff of the County.

6.     At all times relevant hereto, Defendants acted in concert with the performance or conduct of their actions referenced below or acted independently.

7.     At all times relevant hereto, Sheriff McAndrew acted under the color of state law.

## JURISDICTION AND VENUE

8.     This action is brought pursuant to 42 U.S.C. §§ 1983, 1985 and 1988, the First and Fourteenth Amendments of the United States Constitution, and the Constitutional provisions set forth herein, as well as the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1.

9.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1367, and 1391(b)(2).

10.     Venue lies in the United States District Court for the Middle District of Pennsylvania pursuant to 28 U.S.C. §§ 1391 (b) and (c), insofar as the alleged unlawful conduct complained of in this Complaint, which forms the factual and legal basis of Officer Capman's claims, arose within the geographical limits of this District and involves a Defendant who resides within the jurisdictional limits.

11.     All of the claims herein arose within the jurisdiction of the United States District Court for the Middle District of Pennsylvania and involve a Defendant who resides within the jurisdictional limits.

## FACTUAL BACKGROUND

12.     Officer Capman incorporates by reference the preceding paragraphs as if set forth in full herein.

13.     The Sheriff's Office is a public employer within the meaning of Section 301(1) of the Public Employe Relations Act ("PERA").

14.     Sheriff McAndrew was elected as the County's Sheriff in November 2013 and took office in January 2014.

15.     The Lackawanna County Deputy Sheriff's Association (the "Association") is an employe organization within the meaning of Section 301(3) of PERA, and pursuant thereto is the exclusive bargaining agent for a unit of deputy sheriffs employed at the Sheriff's Office.

16.     The Association and the County have been parties to a Collective Bargaining Agreement (the "CBA") at all times relevant hereto.  See the Collective Bargaining Agreement between the Association and the County effective from January 10, 2010 through December 31, 2013; see also County Resolution No. 15-0137 (extending the existing CBA until December 31, 2017); see also County Resolution No. 18-0032 (extending the existing CBA until December 31, 2022), true and correct copies are collectively attached hereto as Exhibit "A".

4

17.    Officer Capman is a 47-year-old, full-time correctional officer employed by the County.

18.    Officer Capman previously served as a Deputy Sheriff in the Sheriff's Office for more than twenty-one (21) years and held the rank of Corporal from 2010 through 2019.

19.    Officer Capman's duties and responsibilities in the Sheriff's Office included, but were not limited to, drafting policies and procedures for implementation in the Sheriff's Office, such as the County's Active Shooter Policy and the Employee Handbook, scheduling Pennsylvania Commission on Crime and Delinquency ("PCCD") trainings, hiring new deputies, scheduling CPR training, providing firearm and taser instruction, and fulfilling the daily operations of the Sheriff's Office if a supervising deputy was scheduled off.

20.    Officer Capman was also assigned as the supervisor in charge of special events, such as concerts and festivals, when senior ranking officials were unavailable.

21.    Officer Capman also belonged to the Association and served in numerous roles, including President, Vice President, and Secretary.

22.    Officer Capman was also temporarily appointed as an Acting Sergeant in the Sheriff's Office in March 2017 while Sergeant John Acculto ("Sergeant Acculto") was off from work due to a surgery.

23.     Officer Capman's duties as Acting Sergeant included, but were not limited to, daily court operations, conducting meetings, completing payroll, and working special events.

24.     Officer Capman was never disciplined while performing the Acting Sergeant duties.

25.     Officer Capman resumed his role of Training Corporal in June 2017 when Sergeant Accutlo returned, and was assigned to the Family Court building.

26.     On or about April 25, 2018, the Association filed an unfair labor practice charge (the "April 2018 ULP charge") on Officer Capman's behalf with the Pennsylvania Labor Relations Board ("PLRB") against the County and the Sheriff's Office, alleging that Defendants violated Sections 1201(a)(1) and (3) of the PERA by: a) refusing to promote Officer Capman to a vacant Sergeant position earlier that year, and instead promoting a sheriff with less seniority than Officer Capman, and; b) disciplining Officer Capman and denying him further opportunities to serve as Acting Sergeant in retaliation for Officer Capman filing a grievance in June 2017.

27.     On May 23, 2018, the Secretary of the PLRB issued a Complaint and Notice of Hearing, assigning the charge to conciliation and scheduling a hearing for August 8, 2018.

28.     Throughout 2018 and early 2019, the County was in the process of moving its offices and employees into a newly purchased government building on Wyoming Avenue in Scranton, Pennsylvania (the "new government building").

29.     In June 2018, Sheriff McAndrew asked Officer Capman's father-in-law at a funeral home if Officer Capman was going to run for Sheriff in 2021, to which his father-in-law responded in the affirmative.

30.     On or about January 24, 2019, Sheriff McAndrew notified Officer Capman that he would not be moving into the new government building with the other County employees, but would remain in the Family Court building—as the only Sheriff's Office employee.

31.     Instead of staffing the Family Court building with less senior employees or rotating staff members for this duty, Sheriff McAndrew chose to single out Officer Capman, a 21-year veteran of the Sheriff's Office.

32.     In so doing Sheriff McAndrew isolated Officer Capman from the public, County employees and public officials.

33.     Officer Capman remained isolated for approximately two (2) months in the Family Court building with limited lighting and heat.

34.     On or about March 8, 2019, Sheriff McAndrew removed Officer Capman from the empty Family Court building and re-assigned Officer Capman to the midnight

shift at the Lackawanna County Courthouse (the "Courthouse")—not the new government building where the majority of other County employees now worked.

35.     In so doing, Sheriff McAndrew kept Officer Capman isolated from the public, the vast majority of County employees and public officials, and did not let Officer Capman join County employees in the new government building.

36.     Additionally, when Officer Capman sought overtime work, he was told that he could only work overtime at the Courthouse, and not the new government building.

37.     Also on or about March 8, 2019, Sheriff McAndrew and the County's Deputy Director of Human Resources, Justin MacGregor ("Deputy Director MacGregor") received a complaint regarding a "possible toxic work environment" (the "March 8, 2019 complaint").

38.     Sheriff McAndrew gave Deputy Director MacGregor permission to investigate.

39.     Officer Capman inquired as to the March 8, 2019 complaint but could not receive any information about its contents or who the complainant was.

40.     In May or June 2019, Officer Capman received a Weingarten hearing regarding the March 8, 2019 complaint.

41.    Deputy Director MacGregor was present at the Weingarten hearing on behalf of Sheriff McAndrew.

42.    Mark Novak ("Mr. Novak"), then-Union Vice President, and Sheriff McAndrew's solicitor were also present at the Weingarten hearing.

43.    During the Weingarten hearing, Officer Capman informed Deputy Director MacGregor of his intent to run for Sheriff in 2021 and that all of the foregoing adverse employment actions were due to Officer Capman's intent to run for Sheriff.

44.    The PLRB hearing for the April 2018 ULP charge on took place on May 15, 2019, wherein both sides presented testimony, cross-examined witnesses, and introduced documentary evidence.  See Sept. 30, 2019 Proposed Decision and Order, true and correct copies of which is attached hereto as Exhibit "B".

45.    On June 14, 2019, less than one (1) month after the PLRB hearing, Officer Capman was placed on paid administrative leave pending further investigation of the March 8, 2019 complaint.

46.    On August 26, 2019, the parties to the April 2018 ULP charge filed post-hearing briefs in support of their respective positions.

47.    On September 16, 2019, four (4) months following the PLRB hearing and less than one (1) month following post-hearing briefing, Deputy Director MacGregor issued Officer Capman a due process hearing notice regarding the March 8, 2019

complaint.  See Sept. 16, 2019 Due Process Hearing Notice, a true and correct copy of which is attached hereto as Exhibit "C".

48.     Also that month, the County presented Officer Capman with a four (4) page document entitled "Settlement Agreement & General Release" (the "Agreement").  See Sept. 24, 2019 Settlement Agreement & General Release, a true and correct copy of which is attached hereto as Exhibit "D" at p. 1, ¶ 1, in which Sheriff McAndrew offered Officer Capman a lateral transfer to the Lackawanna County Prison.

49.     The Parties to the Agreement are the County, the Sheriff's Office, Sheriff McAndrew, the Association, and Officer Capman (collectively, the "Parties").  See Exhibit "D".

50.     The Agreement explicitly states that the Parties wish to "avoid the time, expense, distraction and uncertainty of litigating a potential union grievance" regarding the March 8, 2019 "toxic work environment" complaint, and to "resolve the instant disciplinary matter."  See Exhibit "D" at Recitals.

51.     The Agreement also states that the Parties "agree and acknowledge that the resolution of this matter **applies only to the specific facts involving the charges of misconduct made against Mr. Capman** and may not be used by the Parties as precedent in any disciplinary matter, grievance, grievance arbitration, bargaining

10

session, interest arbitration or any other type of legal proceeding." <u>See</u> Exhibit "D" at ¶ 3 (emphasis added).

52.     As part of the Agreement, Officer Capman had to draft a letter, entitled "Voluntary Letter of Resignation," wherein he formally resigned his position as Corporal with the Sheriff's Office to accept employment as a correctional officer in the Lackawanna County Prison (the "LCP"), which provided substantially less pay and seniority.  <u>See</u> Exhibit "D".

53.     Despite its negative impact on his earnings and seniority, Officer Capman entered into the Agreement due to the hostile work environment created by Sheriff McAndrew.

54.     The Agreement also contains a general release of claims "arising at any time up to the date of this Agreement, including without limitation of the foregoing general terms, **any claims arising out of the circumstances that specifically led to this agreement**." <u>See</u> Exhibit "D" at ¶ 5.

55.     The Parties signed the Agreement on September 24, 2019.  <u>See</u> Exhibit "D".

56.     Officer Capman has been employed at the LCP since September 25, 2019.

57.     Officer Capman began his employment with the LCP at the bottom of the seniority chain.

58.     Officer Capman's base salary decreased by approximately $11,500.00 since he began working in the LCP as a correctional officer.

59.     Officer Capman's overtime rate of pay also decreased by approximately $6.00 or $7.00 per hour when he transferred to the LCP.

60.     Officer Capman also lost approximately eighteen (18) days of vacation time and approximately twenty-one and a half (21.5) days of sick time that he had accrued in the Sheriff's Office when he transferred to the LCP.

61.     Since Officer Capman's transfer to the LCP occurred during the middle of the 2019 calendar year, his sick and vacation time loss was not reflected until the 2020 calendar year—specifically his January 24, 2020 pay stub—wherein his sick time decreased from 973.6352 hours to 800.0027 hours, and his vacation time decreased from 344.00 hours to 200.00 hours.

62.     Officer Capman continuously inquired about the loss of sick and vacation time via emails to Deputy Director MacGregor and other County Human Resources personnel but received either non-responses or inconsistent responses regarding which CBA—either the Sheriff's Office's or the LCP's—governed his vacation/sick/personal time, and how many accrued hours can transfer.

63.     As a result, Officer Capman filed a written grievance with the Association for violations of the Lackawanna County Employee Transfer Policy, as well as Articles

XVII and XX of the Sheriff's Office CBA and Articles 11 and 17 of the LCP's CBA stemming from the County's failure to compensate him for his sick and vacation time. See May 18, 2020 Grievance, a true and correct copy is attached hereto as Exhibit "E".

64.    Officer Capman has not received a response to his grievance and has followed up with the County as recently as December 29, 2020.

65.    The County informed Officer Capman that it would compensate him for the vacation and personal time that he could not use when he was placed on administrative leave in June 2019, but Officer Capman has not received payment for such. See Nov. 29, 2019 Email from Deputy Director MacGregor to Officer Capman, a true and correct copy is attached as Exhibit "F".

66.    On September 30, 2019, Hearing Examiner John Pozniak ("Hearing Examiner Pozniak") issued a Proposed Decision and Order on the April 2018 ULP charge. See Exhibit "B".

67.    Hearing Examiner Pozniak concluded that Sheriff McAndrew would have promoted Officer Capman to the Sergeant position had it not been for Officer Capman filing the June 2017 grievance, and thus Defendants violated PERA. See Exhibit "B" at p. 8.

68.    In other words, Hearing Examiner Pozniak found that Sheriff McAndrew retaliated against Officer Capman for filing a grievance.

69.     On April 24, 2020, Hearing Examiner Pozniak's Proposed Decision and Order became final.  <u>See</u> Apr. 24, 2020 PLRB Final Order, a true and correct copy of which are attached hereto as Exhibits "G".

70.     The PLRB found that, upon review of the entire background of the case, "Sheriff McAndrew engaged in a pattern of discrimination after Mr. Capman filed the June 9, 2017 grievance, by repeatedly reducing his duties and seniority status in the County Sheriff's Office to the point that Mr. Capman was no longer receiving supervisory opportunities and becoming the least senior corporal even though he had the most experience."  <u>See</u> Exhibit "G" at p. 5.

71.     Thus an independent board of the Commonwealth of Pennsylvania found that Sheriff McAndrew engaged in a pattern of discrimination against Officer Capman for filing a grievance.

72.     As relief, the PLRB ordered Defendants to do as follows:

1. Cease and desist from interfering with, restraining or coercing employes in the exercise of the rights guaranteed in Article IV of PERA;

2. Cease and desist from discriminating in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any employe organization;

3. Take the following affirmative action:

(a) Immediately make Capman whole for all wages and benefits, plus six percent per annum interest, that he would have earned as Sergeant, beginning with the date the Sheriff promoted Cavalieri to the Sergeant position through the date of Capman's resignation from his position with the Sheriff's Office, as well as rescind the March 2018 verbal warning and any reference thereto from Capman's file;

(b) Post a copy of the Proposed Decision and Order and Final Order within five (5) days from the effective date hereof in a conspicuous place readily accessible to the bargaining unit employes and have the same remain so posted for a period of ten (10) consecutive days;

(c) Furnish to the Board within twenty (20) days of the date hereof satisfactory evidence of compliance with the Final Order by completion and filing of the attached Affidavit of Compliance; and and

(d) Serve a copy of the attached Affidavit of Compliance upon the Association.

See Exhibit "G" at p. 8.

73.    To date, the Sheriff's Office and the County have not complied with the PLRB's directives.

74.    The foregoing demonstrates the knowing, willful intent of Defendants to violate and deny the Constitutional, free speech and association rights of Officer Capman, a 21-year veteran of the Sheriff's Office, after Sheriff McAndrew knew or should have known of Officer Capman's intent to run for Sheriff in 2021.

75.     The foregoing demonstrates the intent of Defendants to wrongfully withhold payment of sick and vacation time that had accrued during Officer Capman's 21-year tenure in the Sheriff's Office, and which did not transfer to his new position at the LCP.

76.     The foregoing demonstrates the knowing, willful intent of Defendants to violate and deny the Constitutional, free speech and association rights of Officer Capman after the Association, on Officer Capman's behalf, filed a ULP charge in April 2018 alleging discrimination through Sheriff McAndrew's failure to promote Officer Capman to Sergeant, and also by disciplining Officer Capman and failing to provide him opportunities to serve as Acting Sergeant.

77.     The foregoing demonstrates a continuing course of conduct by Defendants that is prohibited, and which violates Officer Capman's Constitutional rights.

**COUNT I**

**GLENN CAPMAN v. DEFENDANTS LACKAWANNA COUNTY, LACKAWANNA COUNTY SHERIFF'S OFFICE, and MARK McANDREW, individually and in his official capacity**

**Freedom of Speech Pursuant to 42 U.S.C. § 1983**

**FIRST AMENDMENT VIOLATION**

78.    Officer Capman incorporates by reference the preceding paragraphs as if set forth in full herein.

79.    Defendants violated the provisions of 42 U.S.C. § 1983 in that Sheriff McAndrew, acting under color of state law, willfully deprived Officer Capman of the privileges and immunities secured to him by the First and Fourteenth Amendments of the United States Constitution and, in particular, his right to hold employment without infringement of his First Amendment right to freedom of speech.

80.    Officer Capman spoke as a private citizen in June 2018 and again in May/June 2019 involving a matter of public concern—his intent to run for Sheriff in 2021.

81.    Officer Capman's speech is protected by the First Amendment.

82.    Defendants willfully and recklessly retaliated against Officer Capman for his speech by offering to transfer Officer Capman to the LCP as a full-time correctional officer in September 2019—for substantially less pay, seniority, and loss of accrued

17

sick and vacation time—in exchange for not pursuing possible disciplinary action against Officer Capman.

83.    Defendants willfully and recklessly retaliated against Officer Capman for his speech by isolating him in the Family Court building as the only Sheriff's Office employee for two (2) months from January 2019 until March 2019—separated from other County employees and constituents.

84.    Defendants willfully and recklessly retaliated against Officer Capman for his speech by transferring him to the midnight shift at the Lackawanna County Courthouse beginning on March 8, 2019—separated from other County employees and constituents.

85.    Isolating someone in a poorly lighted and heated building for two (2) months in the winter season could be sufficient to deter a person of ordinary firmness from exercising his or her rights.

86.    Transferring and separating a senior officer from other employees would deter a person of ordinary firmness from exercising his or her rights.

87.    Defendants' actions were to penalize and retaliate against Officer Capman for his exercise of fundamental First Amendment rights of speech after he announced his intent to run for Sheriff in 2021.

88.     Defendants' course of conduct represents a pattern of antagonism and a continuing practice of discrimination dating back to 2018 and continuing to this day.

89.     The aforementioned retaliatory action is outside the scope of the Agreement, which only releases claims related to the March 8, 2019 "toxic work environment" complaint alleged against Officer Capman.

WHEREFORE, Officer Capman respectfully requests this Honorable Court:

i.      Enter a declaratory judgment that Defendants' retaliatory acts complained of herein have violated and continue to violate the rights of Officer Capman as secured by the United States Constitution;

ii.     Enjoin Defendants from continuing said retaliatory practices;

iii.    Award Officer Capman compensatory damages including but not limited to pain, suffering, past economic loss, future economic loss, back pay, front pay, wage increases, loss of life's pleasures, loss of reputation, benefits, emotional distress and other damages;

iv.     Award reasonable costs and attorney's fees;

v.      Grant any other relief this Court deems just and proper under the circumstances.

**COUNT II**

**OFFICER CAPMAN v. DEFENDANTS LACKAWANNA COUNTY & LACKAWANNA COUNTY SHERIFF'S OFFICE**

**Violation of Pennsylvania Wage Payment & Collection Law**
**(43 P.S. § 260.1)**

90.     Officer Capman incorporates by reference the preceding paragraphs as if set forth in full herein.

91.     Officer Capman's employment relationship with the Sheriff's Office was governed by a CBA.

92.     Pursuant to Article XVII, Section 3 and Article XX, Section 4 of the Sheriff's Office CBA, Officer Capman is entitled to payment for approximately 173 hours of sick time and 144 hours of vacation time that accrued during his 21-year tenure with the Sheriff's Office, and which did not transfer to the LCP.

93.     Officer Capman's base salary in the Sheriff's Office, excluding overtime, was $53,500.00 before he transferred to the LCP.

94.     As such, the value of Officer Capman's 173 hours of sick time is approximately $4,449.76, and the value of his 144 hours of vacation time is approximately $3,703.85.

95.     On May 18, 2020, Officer Capman filed a grievance with the Association for violations of the above-referenced sections, as well violations of the Lackawanna County Employee Transfer Policy and Articles 11 and 17 of the LCP's AFSCME CBA.

96.     Officer Capman has not received a response regarding his grievance, despite following up as recently as December 29, 2020.

97.     Notably, the County reassured Officer Capman that it would compensate Officer Capman for unused vacation and personal time, but Officer Capman has not received payment for such.

98.     Officer Capman exhausted his administrative remedies pursuant to the CBA and, as such, his claim under this section may also be properly treated as a claim under the Labor Management Relations Act ("LMRA") for which Officer Capman is entitled to relief.

99.     Officer Capman is entitled to payment of these wages and Defendants' non-payment constitutes an enforceable claim against the County and the Sheriff's Office.

WHEREFORE, Officer Capman respectfully requests this Honorable Court:

i.      Award Officer Capman compensatory damages including but not limited to, economic damages for unpaid sick and vacation time;

ii.     Award reasonable costs and attorney's fees;

iii.   Grant any other relief this Court deems just and proper under the circumstances.

## COUNT III

**GLENN CAPMAN v. DEFENDANTS LACKAWANNA COUNTY, LACKAWANNA COUNTY SHERIFF'S OFFICE, and MARK McANDREW, individually and in his official capacity**

**Freedom of Association Pursuant to
42 U.S.C. § 1983**

**<u>FIRST AMENDMENT VIOLATION</u>**

100.   Officer Capman incorporates by reference the preceding paragraphs as if set forth in full herein.

101.   Defendants violated the provisions of 42 U.S.C. § 1983 in that Sheriff McAndrew, acting under color of state law, willfully deprived Officer Capman of the privileges and immunities secured to him by the First and Fourteenth Amendments of the United States Constitution and, in particular, his right to hold employment without infringement of his First Amendment right to association.

102.   Officer Capman engaged in constitutionally protected conduct when, through the Association, he filed a ULP charge on April 25, 2018 against Defendants for Sheriff McAndrew's failure to promote Officer Capman to Sergeant, as well as for disciplining Officer Capman and denying him opportunities to serve as Acting Sergeant.

103.    Litigation of the April 25, 2018 ULP continued throughout 2018 and 2019, as the PLRB originally set a hearing date for August 8, 2018; the parties requested continuances; the hearing took place on May 15, 2019, and; the parties filed post-hearing briefs in support of their respective positions on August 26, 2019.

104.    Defendants willfully and recklessly retaliated against Officer Capman for his constitutionally-protected conduct by offering to transfer Officer Capman to LCP as a full-time correctional officer in September 2019—for substantially less pay, seniority, and loss of accrued sick and vacation pay—in exchange for not pursuing possible disciplinary action against Officer Capman.

105.    Defendants' actions were to penalize and retaliate against Officer Capman for exercising his First Amendment right to association after he filed his April 2018 ULP charge with the PLRB.

106.    The aforementioned retaliatory action is outside the scope of the Agreement, which only releases claims related to the March 8, 2019 "toxic work environment" complaint alleged against Officer Capman.

107.    Defendants' course of conduct is part of a continuing practice of discrimination dating back to 2018 and continuing to this day.

WHEREFORE, Officer Capman respectfully requests this Honorable Court:

i.      Enter a declaratory judgment that Defendants' retaliatory acts complained of herein have violated and continue to violate the

rights of Officer Capman as secured by the United States Constitution;

ii.    Enjoin Defendants from continuing said retaliatory practices;

iii.   Award Officer Capman compensatory damages including but not limited to pain, suffering, past economic loss, future economic loss, back pay, front pay, wage increases, loss of life's pleasures, loss of reputation, benefits, emotional distress and other damages;

iv.    Direct the County to get the appropriate training to ensure that future constitutional violations will not occur;

v.     Award reasonable costs and attorney's fees;

vi.    Grant any other relief this Court deems just and proper under the circumstances.

## COUNT IV

**GLENN CAPMAN v. DEFENDANTS LACKAWANNA COUNTY and LACKAWANNA COUNTY SHERIFF'S OFFICE**

**Municipal Liability Pursuant To
42 U.S.C. § 1983**

**<u>CUSTOM & POLICY</u>**

108.   Officer Capman incorporates by reference the preceding paragraphs as if set forth in full herein.

109.   The County and the Sheriff's Office had unconstitutional customs— acquiescence in retaliation based on speech and association activities—that

encouraged Sheriff McAndrew to believe that he could violate the Constitutional rights of Officer Capman.

110.   The County and the Sheriff's Office's unconstitutional customs were the moving forced behind the aforementioned violations of the First and Fourteenth Amendments—*i.e.*, Officer Capman transferring to the LCP as a full-time correctional officer in September 2019 for substantially less pay, seniority, and loss of accrued sick and vacation time in exchange for not pursuing possible disciplinary action against Officer Capman.

111.   Defendants' course of conduct is part of a continuing practice of discrimination dating back to 2018 and continuing to this day.

WHEREFORE, Officer Capman respectfully requests this Honorable Court:

vii.   Enter a declaratory judgment that Defendants' retaliatory acts complained of herein have violated and continue to violate the rights of Officer Capman as secured by the United States Constitution;

viii.   Enjoin Defendants from continuing said retaliatory practices;

ix.   Award Officer Capman compensatory damages including but not limited to pain, suffering, past economic loss, future economic loss, back pay, front pay, wage increases, loss of life's pleasures, loss of reputation, benefits, emotional distress and other damages;

x.   Direct the County to get the appropriate training to ensure that future constitutional violations will not occur;

xi.    Award reasonable costs and attorney's fees;

xii.   Grant any other relief this Court deems just and proper under the circumstances.

Respectfully submitted,

s/Joel M. Wolff
Joel M. Wolff
**WOLFF LAW, P.C.**
604 N. Blakely Street
Dunmore, PA 18512
(570) 866-2755

Attorney for Glenn Capman

DATED:  February 26, 2021