UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GLENN CAPMAN, | : | |
| Plaintiff | : | CIVIL ACTION NO. 3:21-362 |
| v. | : | (JUDGE MANNION) |
| LACKAWANNA COUNTY, *et al.,* | : | |
| Defendants | : | |

## MEMORANDUM

Pending before the court is the defendants' motion to dismiss the plaintiff's complaint or, in the alternative, to enforce settlement agreement and general release. (Doc. 9). Based upon the court's review of the record, the defendants' motion will be **GRANTED**.

By way of relevant procedural background, the plaintiff filed the instant action on February 26, 2021, in which he sets forth four claims: a First Amendment free speech violation pursuant to 42 U.S.C. §1983 (Count I); a violation of the Pennsylvania Wage Payment and Collection Law pursuant to 43 P.S. §260.1 (Count II); a First Amendment freedom of association violation pursuant to §1983 (Count III); and a municipal liability claim pursuant to §1983 (Count IV). (Doc. 1). On April 30, 2021, the defendants[1]

---

[1] The named defendants are Lackawanna County, the Lackawanna County Sheriff's Office, and Mark McAndrew.

filed the instant motion to dismiss the plaintiff's complaint or, in the alternative, to enforce a settlement agreement. (Doc. 9). A brief in support of the motion was filed on May 14, 2021. (Doc 13). The plaintiff filed a brief in opposition to the defendants' motion on June 18, 2021. (Doc. 20). On July 2, 2021, the defendants filed a reply brief. (Doc. 21).

The factual allegations of the plaintiff's complaint, which the court must accept as true for purposes of the instant motion have been summarized as follows by the plaintiff:

> Officer Capman has been employed as a full-time correctional officer at the Lackawanna County Prison ("LCP") since September 25, 2019. (See Doc. 1 at ¶ 56). Officer Capman previously served as a Deputy Sheriff in the Sheriff's Office for more than twenty-one (21) years, where he held the rank of Corporal from 2010 through 2019 and also served as Acting Sergeant from March 2017 to June 2017. (See Doc. 1 at ¶¶ 17, 18, 22, 25). Sheriff McAndrew served as the Sheriff of the County at all times relevant hereto. (See id. at ¶ 5).
> Officer Capman was assigned to work in the Family Court building beginning in June 2017. (See id. at ¶ 25). In June 2018 Sheriff McAndrew asked Officer Capman's father-in-law at a funeral home if Officer Capman was going to run for Sheriff in 2021, to which his father-in-law responded in the affirmative. (See id. at ¶ 29). On or about January 24, 2019, Sheriff McAndrew notified Officer Capman that he would not be moving from the Family Court building into the newly-purchased government building on Wyoming Avenue in Scranton, Pennsylvania (the "new government building") with the other County employees, but would remain in the Family Court building-as the only Sheriff's Office employee. (See id. at ¶¶ 28, 30). Instead of staffing the Family Court building with less senior employees or rotating staff members for this duty, Sheriff McAndrew chose to single out Officer Capman, a 21-year

veteran of the Sheriff's Office. (See id. at ¶31). Sheriff McAndrew took such action because he recognized Officer Capman as a political threat and isolating Officer Capman from the public, County employees and public officials would minimize the political threat posed to him. (See id. at ¶32). Officer Capman remained isolated for approximately two (2) months in the Family Court building with limited lighting and heat. (See id. at ¶ 33).

On or about March 8, 2019, Sheriff McAndrew removed Officer Capman from the empty Family Court building and re-assigned Officer Capman to the midnight shift at the Lackawanna County Courthouse (the "Courthouse")-not the new government building where the majority of other County employees now worked. (See id. at ¶ 34). In so doing, Sheriff McAndrew kept Officer Capman isolated from the public and the vast majority of County employees and public officials, and did not let Officer Capman join County employees in the new government building. (See id. at ¶ 35). Additionally, when Officer Capman sought overtime work, he was told that he could only work overtime at the Courthouse, and not the new government building, despite Officer Capman's seniority rights. (See id. at ¶ 36).

Also on or about March 8, 2019, Sheriff McAndrew and the County's Deputy Director of Human Resources, Justin MacGregor ("Deputy Director MacGregor"), received a complaint regarding a possible "toxic work environment" (the "March 8, 2019 complaint") arising out of the purported misconduct of Officer Capman. (See id. at ¶ 37). In May or June 2019, Officer Capman received a Weingarten hearing regarding the March 8, 2019 complaint wherein Officer Capman informed Deputy Director MacGregor of his intent to run for Sheriff in 2021. (See id. at ¶¶ 40, 43). On June 14, 2019, Officer Capman was placed on paid administrative leave pending investigation of the March 8, 2019 complaint. (See id. at ¶ 45). Officer Capman ultimately transferred to the LCP as a full-time correctional officer pursuant to the Agreement entered into specifically to address the purposed "toxic work environment" allegedly created by Officer Capman. (See id. at ¶¶ 50, 52).

On February 26, 2021, Officer Capman commenced this action against Defendants by way of a Complaint alleging violations of his First Amendment rights to freedom of speech

> [alleging][2] Sheriff McAndrew, acting under color of state law, retaliated against Officer Capman after Sheriff McAndrew learned that Officer Capman intended to run against him in 2021 and posed a political threat, as well as freedom of association after the Lackawanna County Deputy Sheriff's Association (the "Association") filed and litigated an unfair labor practice ("ULP") charge on Officer Capman's behalf with the Pennsylvania Labor Relations Board ("PLRB") throughout 2018 and 2019. (See Doc. 1, generally).
>
> Specifically, the ULP charge alleged that Sheriff McAndrew refused to promote Officer Capman to a vacant Sergeant position in 2018, disciplined Officer Capman and denied him further opportunities to serve as Acting Sergeant in retaliation for Officer Capman filing a grievance in June 2017. (See id. at ¶¶ 13, 26). On September 30, 2019, the Hearing Examiner issued a Proposed Decision and Order finding that Sheriff McAndrew retaliated against Officer Capman for filing a grievance. (Id. at ¶¶ 66-68; see also September 30, 2019 Proposed Decision and Order attached as Exhibit "B" to Doc. 1, generally). On April 24, 2020, the Hearing Examiner's decision became final. (See Doc. 1 at ¶ 69; see also April 24, 2020 PLRB Final Order attached as Exhibit "G" to Doc. 1, generally).

(Doc. 20, pp. 1-5).

The defendants have responded to the plaintiff's complaint by filing the pending motion in which they argue that the plaintiff's claims are barred by a Settlement Agreement and General Release, the "Agreement" referenced above, which was entered into by the parties in this action on September 24, 2019. Defendants argue that the Agreement contained a general release of all claims which "specifically and unconditionally released any and all

---

[2] As worded, plaintiff's statement is a conclusion of law which the court need not accept on a motion to dismiss.

- 4 -

complaints of any nature whatsoever which [plaintiff] ever had against Defendants, including without limitation, any claims arising out of the circumstances that specifically led to the Agreement, expressly identifying and including claims under §1983 of the Civil Rights Act of 1964, which are the claims asserted in this action." The plaintiff argues, on the other hand, that the Agreement only releases claims related to the March 8, 2019 "toxic work environment" complaint and does not release the claims raised in this action.

When construing the terms of a settlement and general release, it is well-settled that federal courts in Pennsylvania are guided by Pennsylvania law. *York v. U.S.*, 2013 WL 1953535, *1 (M.D.Pa. May 10, 2013) (citing *Three Rivers Motor Co. v. Ford Motors Co.*, 522 F.2d 885, 892 (3d Cir. 1975)). Moreover, "in Pennsylvania, the general rule for construction of releases is that the intention of the parties must govern, but this intention must be gathered from the language of the release. *Evans v. Marks*, 218 A.2d 802 (Pa. 1966)). A signed settlement and release is binding upon the parties unless executed and procured by fraud, duress, accident or mutual mistake. *Kent v. Fair*, 140 A.2d 445 (Pa. 1958)." *Id*. This general rule applies equally to releases executed in the settlement of civil rights claims.

> A contract that releases potential . . . federal civil rights claims, is valid if it was knowingly and voluntarily executed. *See*

> *Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 522 (3d Cir. 1988), *superseded by statute on other grounds*. To consider whether a release is valid, the Third Circuit directs courts to consider the totality of the circumstances surrounding its execution, and to do so district courts should consider the following non-exhaustive factors: (1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time the plaintiff had for deliberation about the release before signing it; (4) whether plaintiff knew or should have known his rights upon execution of the release; (5) whether plaintiff was encouraged to seek, or in fact received benefit of counsel; (6) whether there was an opportunity for negotiation of the terms of the agreement; and (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled by contract or law. *Cirillo v. Arco Chem. Co.*, 862 F.2d 448, 451 (3d Cir. 1988) (citing *Coventry*, 856 F.2d at 523). Courts should also consider "whether there is evidence [that the employer procured the release through] fraud or undue influence, or whether enforcement of the release would be against the public interest." *Cuchara v. GaiTronics Corp.*, 129 F. App'x 728, 731 (3d Cir. 2005).

*Id.* at *2 (citing *Gregory v. Derry Twp. School Dist.*, 2010 WL 146332, *5 (M.D.Pa. Jan. 11, 2010)).

When construing the effect of a settlement and general release: "First, a court must look to the language of the release. In examining the language of a release, the terms of the release will be given their ordinary meaning unless a different meaning was clearly intended. In addition, the language of the release must be viewed in the context of the entire document. *See, e.g., Harrity v. Medical College of Pennsylvania Hosp.*, 653 A.2d 5 (Pa.Super. 1994). Each part of the release must be given effect." *Bickings v. Bethlehem Lukens Plate*, 82 F.Supp.2d 402, 405 (E.D.Pa. 2000) (some citations omitted). Thus, a party may not pick and choose only those portions of a settlement that are convenient and seek selective enforcement of a settlement and release.

*Id.*

Here, while the defendants argue the applicability of each of the factors above, the plaintiff argues that only one of the factors is at issue - whether the language of the Agreement clearly and specifically waives his First Amendment claims in this action. Plaintiff argues that it does not. In doing so, plaintiff cites to Paragraph 4 of the Agreement, which he argues shows that the Agreement applies "only to the specific facts involving the charges of misconduct made against [him]."

Upon review of the Agreement, there is a "Recitals" section, which provides the procedural background of the "toxic work environment" complaint received by the Sheriff's Office regarding the plaintiff. It further reflects the parties intention to resolve the matter through the Agreement. The Agreement then sets forth the "Terms and Conditions." Those terms provide that in lieu of possible discipline against plaintiff, the County offered him a lateral transfer of employment to the Lackawanna County Prison as a full-time correctional officer, which plaintiff accepted. (Doc. 1, Ex. D, ¶1). Plaintiff agreed to abide by all terms and conditions of employment as a newly hired correctional officer. (*Id.,* ¶2). Plaintiff agreed to voluntarily resign his employment with the Sheriff's Department to accept his employment as a correctional officer. (*Id.,* ¶3). Paragraph 4 then states in its entirety:

> 4. The parties agree and acknowledge that the resolution of this matter applies only to the specific facts involving the charges of misconduct made against Mr. Capman and may not be used by the Parties as precedent in any disciplinary matter, grievance, grievance arbitration, bargaining session, interest arbitration or any other type of legal proceeding.

(*Id.*, ¶4).

Paragraph 4 relates not at all to the plaintiff's release of claims, but simply provides that the terms given plaintiff for the resolution of this particular claim are non-precedential in any other proceedings. The plaintiff's release of claims follows the non-precedential provision in Paragraph 5.

Paragraph 5 reads as follows:

> Mr. Capman agrees that in consideration of the promises contained herein, and for other good and valuable consideration, Mr. Capman, intending to be legally bound hereby, for himself, and all of his dependents, heirs, executors, administrators, legal and/or personal representatives, successors, assigns and agents does hereby unconditionally and irrevocably remise, release and forever discharge for the County and each and every of its commissioners, elected officials, including but not limited to Sheriff Mark McAndrew in his individual and/or official capacity, directors, officers, employees, attorneys, representatives, administrators, assigns insurers and/or agents, both current and former, of and from any and all complaints including but not limited to unfair labor practice complaints with the Pennsylvania Labor Relations Board, grievances, actions, liabilities, obligations, promises, agreements, controversies, damages, claims, causes of action, lawsuits, debts, demands, costs, losses, rights, charges and/or expenses (including attorneys' fees and costs), of any nature whatsoever, asserted or unasserted, known or unknown, suspected or unsuspected, which he ever had, now has, or hereafter may have against the

>County, Office and/or Sheriff McAndrew, arising at any time up to the date of this Agreement, including without limitation of the foregoing general terms, any claims arising out of the circumstances that specifically led to this agreement. This Settlement Agreement expressly includes but is not limited to claims under Title VII of the Civil Rights Act of 1964, §1983 of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Fair Labor Standards Act, the Pennsylvania Employee Relations Act, the National Labor Relations Act, Family and Medical Leave Act, the Pennsylvania Human Relations Act, the Pennsylvania Workers' Compensation Act, federal and Pennsylvania statutes, and common law.

(Doc. 1, Ex. D, ¶5).

The language of the release is clear and unambiguous. The plaintiff agreed "unconditionally" to release "any and all complaints" "of any nature whatsoever, asserted or unasserted, known or unknown, suspected or unsuspected, which he ever had, now has, or hereafter may have against the County, Office and/or Sheriff McAndrew, arising at any time up to the date of this Agreement, including without limitation of the foregoing general terms, any claims arising out of the circumstances that specifically led to this agreement." The settlement agreement expressly included claims under §1983 and Pennsylvania statutes. The Agreement does not contain any exclusions or exceptions. Although the Agreement may have been the result of the "toxic work environment" complaint brought against the plaintiff, the

general release of claims is all-encompassing and is not limited only to claims arising out of that matter.[3]

In light of the foregoing, the court finds that the plaintiff released any and all claims that he could have made against the defendants in this action by way of the September 24, 2019 Agreement. As a result, the claims which he now attempts to raise in the instant action are precluded and the defendants' motion to dismiss will be granted. Although the Third Circuit has instructed that a district court must permit a curative amendment if a claim is vulnerable to a 12(b)(6) dismissal, a court need not grant leave to amend if amendment would be inequitable or futile. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008). Because the court finds that the Settlement Agreement and General Release here precludes plaintiff's claims,

---

[3] The plaintiff offers no substantive opposition to the defendant's discussion of the remaining factors. Although they are not discussed at length herein, the court has reviewed defendants' argument as to the remaining factors and finds that they also weigh in favor of dismissal.

amendment of these claims would be futile. Thus, plaintiff's claims will be dismissed with prejudice. An appropriate order shall issue.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: March 24, 2022**
21-362-01

- 11 -